UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGELA PORTER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

Case No. 1:13-cv-1145
Hon. Hugh W. Brenneman, Jr.

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

Plaintiff was born on November 8, 1973 (AR 147).[1] She alleged a disability onset date of January 26, 2011(AR 147). Plaintiff completed some college with specialized training in accounting; however, she did not earn a degree (AR 30-31, 160). She had previous employment as a delivery driver, house cleaner, quality inspector (factory) and cafeteria worker (food prep and dishwasher) (AR 38-25, 160). Plaintiff identified her disabling conditions as bipolar, depression, schizoaffective disorder, arthritis left knee, chest pain, chronic neck pain and hairline fracture C-5 (AR 159). An Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 18, 2012 (AR 14-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now

---

[1] Citations to the administrative record will be referenced as (AR "page #").

before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her SSI application date of April 27, 2011 (AR 16). At the second step, the ALJ found that plaintiff had severe impairments of substance abuse [alcohol and marijuana]; affective disorder, anxiety disorder, personality disorder and schizoaffective disorder (AR 16). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 17). Specifically, plaintiff did not meet the requirements of Listings 12.03 (Schizophrenic, Paranoid and Other Psychotic Disorders), 12.04 (Affective Disorders) or 12.09 (Substance Addiction Disorders) (AR 17-18).

The ALJ decided at the fourth step:

> [T]hat claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: Claimant can only do simple, routine and repetitive tasks. She can have only occasional changes in the work setting, interaction with public, interaction with co-workers and supervision.

(AR 19). The ALJ found that plaintiff was capable of performing past relevant work as a dishwasher, work which was not precluded by her residual functional capacity (RFC) (AR 20).[2] Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the

---

[2] The ALJ also made an alternative finding at the fifth step that plaintiff could perform a significant number of unskilled jobs at all exertional levels in the regional economy (AR 20-21). Specifically, plaintiff could perform the following unskilled work in the Lower Peninsula of Michigan: cleaner/housekeeper (18,000 jobs); order picker (15,600 jobs); and small parts sorter (10,100 jobs) (AR 20-21).

Social Security Act, at any time since April 27, 2011, the date the application for SSI was filed (AR 21).

### III. ANALYSIS

Plaintiff has raised a single issue on appeal.

**There is no substantial evidence to support the dismissal of treating and examining evidence of record.**

The ALJ summarized plaintiff's medical history as follows:

On January 26, 2011 claimant was admitted to the hospital on an involuntary status due to disorganized speech and behavior. Her treatment included psychotropic medications and group therapy. It was reported at the time of discharge, claimant was stable enough to take care of her physical needs. Her discharge diagnoses were schizoaffective disorder, chronic, recurrent, currently in remission; alcohol abuse versus dependence and cluster B traits (Exhibits 1F and 5F).

Subsequent to claimant's discharge from the hospital, she started treatment at Community Mental Health of Clinton Eaton Ingham Counties. It was reported claimant presented as anxious and restless, appearing distracted. It was noted claimant's speech was rapid, disorganized and irrelevant, and her general behavior was dramatic, restless and bizarre. Claimant's diagnoses included schizoaffective disorder, cocaine abuse and alcohol abuse. Her treatment included medication reviews and case management services (Exhibits 2F, 3F and 6F).

In April 2011 claimant was found eligible for Medicaid and state disability assistance (Exhibit 5F).

In July 2011 claimant started treatment with Shannon Wiggins D.O., a family physician. She reported substance abuse, neck pain, knee pain and warts. She was treated conservatively with medication (Exhibits 4F and 9F).

In March 2012 Renee Bentley L.M.S.W., a clinical social worker, evaluated claimant. The Minnesota Multiphasic Personality Inventory (MPPI-2) was administered. Claimant's scores were indicative of someone who typically had problems and pressures resulting from previous impulsive behavior, substance use, anxiety and emotional disarray. Ms. Bentley noted claimant endorsed symptoms of hopelessness, loneliness, depressed mood, feeling like she is a failure, anxiety, mood swings, and chronic worry. Claimant was diagnosed with schizoaffective disorder, bipolar type, anxiety disorder NOS and personality disorder NOS with traits of

paranoid, borderline, antisocial (Exhibit 7F).

(AR 16-17).

Douglas Bentley, Ed. D., of Inner Access Therapy Center, LLC, prepared an undated report based upon Ms. Bentley's March 22, 2012 evaluation, in which he concluded that plaintiff was "totally disabled":

> This client is presently totally disabled. She cannot maintain concentration or memory long enough to function in a job. Angela will likely always have relationship difficulties, especially problems forming relationships. She had limited role models as a child, and developed unhealthy patterns as a young adult. She frequently has difficulty caring about the needs of others, as she believes others do not or can not care about her. She survives by manipulation and deceit when straightforward requests fail. This will cause significant work place issues. Additionally her anxiety, paranoia about others, as well as unusual and occasionally bizarre thoughts and depressed behavior preclude her ability to do any type of job at this time.

(AR 51-52, 333, 337).

At her administrative hearing on May 31, 2012, plaintiff testified: that she is single; lives in a house with her mother; can read, write and do simple math; receives state disability assistance, food stamps and Medicaid; and works part-time for Sherry Smith cleaning houses earning $10.00 per hour. (AR 19, 33-38). Plaintiff also testified that she was hospitalized in January 2011 due to crying, depression, and anxiety and panic attacks at home and at work (AR 19, 38). She last used alcohol about three weeks ago, last used marijuana a couple of weeks ago and last used cocaine in about 1998 (AR 19, 46). Plaintiff also stated she broke her neck in January 1998, which resulted in lifting restrictions for one week (AR 19). Plaintiff's representative referred her to Ms. Bentley, whom plaintiff saw once (AR 19, 51-52). In addition to her part-time job, plaintiff testified that she walks and swims (AR 19, 64). Plaintiff reported that she had no problems with personal care, she

mowed the lawn, cleaned, ironed and did laundry, prepared complete meals with several courses and went grocery shopping (AR 17,167-70).

In reviewing the medical evidence, the ALJ gave no weight to Dr. Bentley's opinion, because "[plaintiff] testified that she was never evaluated by Dr. Bentley, only by Ms. Bentley," that plaintiff's representative referred her to Ms. Bentley, and that the record as a whole did not support this opinion (AR 19). In reaching this determination, the ALJ reviewed plaintiff's medical history and her daily activities. The ALJ acknowledged that plaintiff had impairments of substance abuse, affective disorder, anxiety disorder, personality disorder and schizoaffective disorder (AR 19). However, the ALJ noted that plaintiff had not been taking her psychotic medications when she was hospitalized in January 2011 (AR 19). When plaintiff was discharged from the hospital in February 2011, the medical records reflected that she was stable with medication and treatment (AR 19). In May 2011, a Field Office employee noted claimant had no problems with understanding, coherency, concentrating, talking or answering (AR 19, 147-49). In June 2011, plaintiff reported that she performed a wide range of activities of daily living (e.g., performing personal care, mowing the lawn, cleaning, doing laundry, preparing complete meals and grocery shopping ), that she followed written and spoken instructions very well, and that she handled change well (AR 19, 167-73). In August and November 2011, plaintiff's treating physician, Dr. Wiggins, reported that plaintiff had normal physical, neurological and psychiatric examinations (AR 19, 238-54, 345-61). Based on this record, the ALJ concluded that plaintiff "does not need a structured living arrangement," that she has no psychotic symptoms, that she works part-time cleaning houses, and that her mental status is stable with treatment (AR 19-20).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence

because the ALJ improperly rejected plaintiff's "interview/examination" by Ms. Bentley (a social worker at Inner Acess Therapy). The Court disagrees. "It is within the authority of the ALJ to resolve any conflicts among the opinions of treating and examining physicians." *Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996). *See Craft v. Commissioner of Social Security*, 39 Fed.Appx. 274, 276 (6th Cir. 2002) ("[i]t is the Commissioner's function to resolve conflicts in the medical evidence"). While Dr. Bentley signed the report regarding the March 22, 2012 evaluation, the record does not reflect that plaintiff was examined by the doctor. Assuming that Dr. Bentley reached his opinion based on Ms. Bentley's examination, the ALJ was not required to give this opinion controlling weight. A psychologist who performs a one-time evaluation is not considered a "treating physician" for purposes of evaluating a claimant's disability. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("[t]he treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records"). Non-treating sources (such as Dr. Bentley) are not granted the presumption of controlling weight afforded to treating physicians under 20 C.F.R. § 416.927(c). *See Coldiron v. Commissioner of Social Security*, 391 Fed. Appx. 435, 442 (6th Cir.2010), citing *Atterberry v. Secretary of Health & Human Services*, 871 F.2d 567, 572 (6th Cir.1989).

In addition, while the ALJ's decision is required to give "good reasons" for the weight assigned a treating source's opinion, *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004), this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th

8

Cir.2007). However, in this case, the ALJ did give good reasons for the weight assigned to Dr. Bentley's report, having relied on a review of the medical record, which included statements by plaintiff's treating physician, Dr. Wiggins. Finally, even if Dr. Bentley had been a treating source (and he was not), the doctor's conclusion that plaintiff is "totally disabled" is not binding on the Commissioner. *See* 20 C.F.R. § 416.927(d)(1) ( "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled' ). Such statements, by even a treating physician, constitute a legal conclusion that is not binding on the Commissioner. *Crisp v. Secretary of Health and Human Services*, 790 F.2d. 450, 452 (6th Cir. 1986). The determination of disability is the prerogative of the Commissioner, not the treating physician. *See Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir. 1984).

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. Accordingly, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.


Date: <u>March 18, 2015</u>          /s/ Hugh W. Brenneman, Jr.
                                     Hugh W. Brenneman, Jr.
                                     United States Magistrate Judge